UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ANTHONY FREEMAN                                                                                              PLAINTIFF

v.                                              No. 5:21-CV-05175

TYSON FOODS, INC. and
TYSON POULTRY, INC.                                                                                       DEFENDANTS

**OPINION AND ORDER**

Before the Court is Plaintiff Anthony Freeman's motion for conditional certification of an FLSA collective action, for approval and distribution of notice, for disclosure of contact information, and for Rule 23 class certification (Doc. 30) (hereafter, "motion to certify"). The Court has also reviewed Mr. Freeman's brief (Doc. 31) in support of his motion, the response in opposition (Doc. 34) filed by Defendants Tyson Foods, Inc. and Tyson Poultry, Inc. (collectively, "Tyson"), and Mr. Freeman's reply in support (Doc. 37). For the reasons given below, Mr. Freeman's motion to certify will be GRANTED IN PART AND DENIED IN PART.

   I.   **Background**

Mr. Freeman filed this lawsuit against Tyson in October 2021, bringing claims against Tyson under the Fair Labor Standards Act and the federal Portal-to-Portal Pay Act (collectively, "FLSA"), as well as the Arkansas State Wage Law ("ASWL"). He alleges that he was a Tyson employee from 2005 until January 2021, the last 27 months of which were spent working as a salaried Production Supervisor at Tyson's poultry facility in Pine Bluff, Arkansas. Mr. Freeman claims that he and other Production Supervisors employed by Tyson were uniformly misclassified as exempt from the FLSA's hourly wage and overtime requirements, even though they spent most of their worktime performing the same or similar duties as those performed by Tyson's hourly-paid employees. Because of his salaried status, Mr. Freeman says he was never paid overtime

1

while working as a Production Supervisor even though he frequently worked more than 40 hours per week.

Mr. Freeman's lawsuit is a putative collective and class action, brought on behalf of all other current and former Production Supervisors for Tyson during the relevant time period. Among other things, his complaint seeks to recover damages for all unpaid overtime wages and other back-pay, restitution, liquidated damages, civil penalties, and attorney fees under the FLSA and ASWL.

On April 12, 2022, Mr. Freeman filed his motion to certify. He seeks conditional certification of the following class under the FLSA:

> All Production Supervisors employed by Tyson company-wide from October 7, 2018 to the present who were paid with a salary and who did not receive overtime pay (hereinafter "the Collective" or "Collective Members").

(Doc. 31, p. 1). He also seeks certification of the following class under Rule 23 of the Federal Rules of Civil Procedure for purposes of his ASWL claims:

> All current and former Production Supervisors employed by Tyson in Arkansas who were paid with a salary and did not receive overtime pay from October 7, 2019 to the date of final disposition of this case ("Arkansas Class Members").

*Id.* at 2. Tyson opposes Mr. Freeman's motion, which has been fully briefed and is now ripe for decision.

## II.    Discussion

The Court will certify an FLSA collective action in this case, but will limit the geographic scope of this class to Production Supervisors who worked at Tyson's Pine Bluff facility during the relevant time period. In other words, the Court will not certify a nationwide collective action. The Court will also deny Mr. Freeman's request to certify a state-law ASWL class action under Rule 23. Below, this Opinion and Order will explain the Court's reasoning for these decisions. The

first subsection below will address the matter of FLSA conditional certification. Then the next subsection will discuss the matter of Rule 23 class action certification.

### A. FLSA Conditional Certification

#### 1. Legal Standard

"The FLSA allows named plaintiffs to sue [their employer] 'for and in behalf of . . . themselves and other employees similarly situated." *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 796 (8th Cir. 2014) (quoting 29 U.S.C. § 216(b)). This type of suit—a collective action—is distinguishable from a class action certified under Federal Rule of Civil Procedure 23, as it requires plaintiffs to use the opt-in mechanism under 29 U.S.C. § 216(b) for joining a putative class of plaintiffs rather than the opt-out procedures in Rule 23. *See Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 536 (8th Cir. 1975). The FLSA gives the Court "the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). "The court has a responsibility to avoid the stirring up of litigation through unwarranted solicitation of potential opt-in plaintiffs, but the district court should, in appropriate cases, exercise its discretion to facilitate notice to potential plaintiffs." *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 890 (N.D. Iowa 2008) (internal quotation marks and citations omitted) (citing *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D. Minn. 1991); *Hoffman-La Roche*, 493 U.S. at 169).

Ultimately, certification of a collective action depends on whether the named plaintiffs are similarly situated to the putative class. Several Justices of the Supreme Court have indicated that the rules for joining similarly situated plaintiffs are similar to the rules of joinder under Federal Rule of Civil Procedure 20(a). *See Epic Sys. Corp. v. Lewis*, -- U.S. --, 138 S. Ct. 1612, 1636 n.3

(2018) (Ginsburg, J., dissenting on other grounds) (indicating that "similarly situated" FLSA plaintiffs may be joined in the same action under Federal Rule of Civil Procedure 20(a), which requires that their claims arise out of the same transaction or occurrence and involve common questions of law or fact). Neither § 216(b) nor the Eighth Circuit Court of Appeals has defined when "other employees [are] similarly situated" such that collective action certification and authorization of notice is appropriate. *See Davenport v. Charter Comms., LLC*, 2015 WL 164001, at *4 (E.D. Mo. Jan. 13, 2015). District courts within the Eighth Circuit, including this District, have historically utilized a two-stage approach for collective action certification under § 216(b). *See, e.g.*, *Resendiz-Ramirez v. P & H Forestry, L.L.C.*, 515 F. Supp. 2d 937, 940 (W.D. Ark. 2007) (Barnes, J.) ("The Court is convinced that the more prudent approach is to use the two-stage certification analysis that is used by a majority of courts, including a majority of district courts in the Eighth Circuit."). Nothing in Eighth Circuit or United States Supreme Court precedent requires district courts to utilize this approach; rather, "[t]he decision to create an opt-in class under § 216(b), like the decision on class certification under Rule 23, remains soundly within the discretion of the district court." *Bouaphakeo*, 564 F. Supp. 2d at 891 (quoting *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001)).

Under the two-stage approach to certifying a collective action, when named plaintiffs move for certification of a collective action—typically early in the discovery process—a court considers whether "plaintiffs and potential class members were victims of a common decision, policy, or plan of the employer that affected all class members in a similar manner." *See Resendiz-Ramirez*, 515 F. Supp. 2d at 941. Courts typically base this initial determination solely on the pleadings and affidavits that have been submitted, and avoid making credibility determinations or findings of fact. *See id.* at 940; *Jost v. Commonwealth Land Title Ins. Co.*, 2009 WL 211943, at *2 (E.D. Mo.

4

Jan. 27, 2009). However, while the burden of proof is relatively low, "some identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency." *Jost*, 2009 WL 211943, at *2. "Unsupported assertions that FLSA violations were widespread and that additional plaintiffs exist do not meet this burden." *Id.* (internal quotation marks omitted).

Some factors that may be considered by district courts making this determination include: (1) whether everyone worked in the same location; (2) whether they held the same job title; (3) whether the alleged violations occurred during the same time period; (4) whether all workers were subjected to the same policies and practices, and whether those policies and practices were established in the same manner by the same decision maker; and (5) the extent to which the acts constituting the alleged violations are similar. *See Watson v. Surf-Frac Wellhead Equip. Co.*, 2012 WL 5185869, at *1 (E.D. Ark. Oct. 18, 2012). If notification is deemed appropriate, the class is conditionally certified for notice and discovery purposes and the case proceeds as a representative action. *See Croft v. Protomotive, Inc.*, 2013 WL 1976115, at *1 (W.D. Ark. May 13, 2013) (citing *Resendiz-Ramirez*, 515 F. Supp. 2d at 940).

Tyson asks the Court to abandon this traditional two-step approach, and to replace it with the standard announced in the January 2021 Fifth Circuit case of *Swales v. KLLM Transport Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021). In that case, the Fifth Circuit proscribed the two-step approach, as well as "any test for 'conditional certification,'" and held that instead "a district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated,'" and that the district court should then "authorize preliminary discovery accordingly." *See id.* at 441. This is not the first time an FLSA defendant has made that request of this Court. In *McCoy v. Elkhart Prods. Corp.*, this Court rejected a request to follow the Fifth Circuit's approach. *See* 2021 WL 510626, at *2

(W.D. Ark. Feb. 11, 2021). Tyson reminds the Court that eight months after doing so and conditionally certifying a collective action, it ultimately granted a motion to decertify in that same case. *See* Doc. 34, p. 14 (citing *McCoy v. Elkhart Prods. Corp.*, 2021 WL 5015625, at *2 (W.D. Ark. Oct. 28, 2021). But this is not remarkable; indeed, the whole point of a conditional certification is that it is conditional, and subject to decertification at a later stage after discovery is complete. *See, e.g.*, *Resendiz-Ramirez*, 515 F. Supp. 2d at 940 ("Typically, the second stage is precipitated by a motion to decertify by the defendant, which is usually filed when discovery is largely complete. If the court decides to decertify the class, the opt-in class members are dismissed from the suit without prejudice and the case proceeds only for the class representatives in their individual capacities."). This Court will continue using the two-step standard it has historically employed in FLSA collective actions, which "has proven to be an efficient means of resolution of this issue" and which entails consideration of whether potential opt-in plaintiffs are similarly situated. *See McCoy*, 2021 WL 510626, at *2.

### 2. Analysis

Tyson offers three primary arguments against conditional certification of a collective action in this case: (1) that Mr. Freeman has failed to demonstrate that others are interesting in joining this litigation; (2) that several of Tyson's affirmative defenses will require individualized analysis of each opt-in plaintiff's job duties; and (3) that Mr. Freeman has failed to demonstrate that he is similarly situated to anyone. With respect to the first argument, although districts within the Eighth Circuit are split over whether it is an appropriate consideration at the conditional certification stage, this Court's longstanding practice has been not to require plaintiffs to prove the existence of others who desire to opt in. *See, e.g.*, *Trogdon v. Kleenco Maint. & Constr., Inc.*, 2015 WL 2345590, at *3 (W.D. Ark. May 15, 2015); *Croft*, 2013 WL 1976115, at *3. The Court endeavors

to maintain uniformity and consistency in its handling of the FLSA putative collective actions on its docket, and therefore will not deviate from its historical practice on this issue.

As for Tyson's second argument, the affirmative defenses at issue are that Mr. Freeman and any opt-in plaintiffs are exempt from the FLSA's minimum wage and overtime requirements under the executive, administrative, and combination exemptions.  *See* 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.708.  Tyson contends that "[t]he application of these exemptions must be determined on a case-by-case and week-by-week basis."  (Doc. 34, p. 16).  The Court believes it is too early to say whether that is true here.  "[T]he 'general rule [is] that the application of an exemption under the [FLSA] is a matter of affirmative defense on which the employer has the burden of proof.'" *Hertz v. Woodbury Cnty., Iowa*, 566 F.3d 775, 783 (8th Cir. 2009) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974)).  But sometimes when plaintiffs are similarly situated enough to warrant certification of a collective action then defendants may use representative evidence to meet their burden of proving an exemption's applicability, and "need not prove exemption as to each member of the collective." *Snively v. Peak Pressure Control, LLC* 347 F. Supp. 3d 294, 300–01 (W.D. Tex. 2018) (internal quotation marks omitted) (collecting cases).  It is too early to say whether such a procedure would be appropriate in the instant case, as merits-based discovery has not yet begun and we do not know how many plaintiffs will ultimately opt in if the collective action is certified.  At the present stage, the inquiry is focused on whether the putative class members were all subject to a common policy or practice of failing to pay for time worked or at the requisite overtime rate; "disparate factual and employment settings of the individual plaintiffs is a consideration reserved for second stage analysis." *Trogdon*, 2015 WL 2345590, at *3 (internal quotation marks omitted).

This brings us to Tyson's third argument against certification of a collective action: that Mr. Freeman has failed to demonstrate he is similarly situated to anyone. Tyson argues that he has not "establish[ed] the existence of an unlawful policy," (Doc. 34, p. 18), or that even if he has, then he has not shown it was applied nationwide. This rather overstates what Mr. Freeman has the burden of showing at this stage, though. At this early step, Mr. Freeman only needs to show a "colorable basis" for the claim that putative class members are the victims of a single decision, policy, or plan, and this showing of a "colorable basis" can be made with "minimal evidence that the putative collective action members were victims of a common policy or plan that *may* have violated the FLSA." *Hamilton v. Diversicare Leasing Corp.*, 2014 WL 4955799, at *2 (W.D. Ark. Oct. 1, 2014) (Hickey, J.) (emphasis added); *see also Walkinshaw v. St. Elizabeth Reg'l Med. Ctr.*, 507 F. Supp. 3d 1106, 1120 (D. Neb. 2020). Importantly, regardless of whether one is at this earlier and more lenient "colorable basis" stage or at the stricter post-discovery stage, "plaintiffs do not have to show that the employer *actually* violated the FLSA" in order to obtain certification of a collective action. *Bouaphakeo*, 564 F. Supp. 2d at 893–94 (emphasis added).

Under this very lenient standard, Mr. Freeman has shown a colorable basis for his claim that he is similarly situated with other individuals who were victims of a common policy or plan that may have violated the FLSA. He has submitted a sworn declaration in support of his motion, testifying that: from October 2018 through January 2021 he worked as a Production Supervisor in Tyson's Pine Bluff, Arkansas poultry facility; during this period he routinely worked more than 40 hours per week without receiving any overtime pay; he spent most of this time performing manual labor that was the same or similar to the work performed by hourly lineworkers; and he is personally familiar with other Production Supervisors at the Pine Bluff facility whose duties and pay were similar to his own. *See* Doc. 30-2, ¶¶ 3–6, 10, 14, 17–18, 21. Given that the Court should

avoid making credibility determinations at this early stage and should base its decision solely on the pleadings and affidavits that have been submitted, *see Resendiz-Ramirez*, 515 F. Supp. 2d at 940; *Jost*, 2009 WL 211943, at *2, this is sufficient to show that Mr. Freeman is similarly situated to other Production Supervisors at the Pine Bluff facility.

Tyson also argues that Mr. Freeman is not similarly situated to putative class members because he cannot show that separate defendant Tyson Foods, Inc. was their employer under the "economic realities test" that is used to determine whether an employment relationship existed between parties. *See* Doc. 34, pp. 26–27. But under the two-step standard for conditional certification, this sort of argument is more appropriately addressed at the decertification or summary judgment stage. *See, e.g.*, *Oliver v. Centene Corp.*, 2022 WL 683123, at *3 (E.D. Mo. Mar. 8, 2022) (collecting cases).

However, the Court agrees with Tyson that Mr. Freeman has not shown a colorable basis that any common policy or plan that may have violated the FLSA was applied nationwide by Tyson. His declaration does not claim or display any personal knowledge of Production Supervisors' duties or pay at any other Tyson facilities except one located in North Little Rock, Arkansas, where Mr. Freeman has not worked in more than a decade. *See* Doc. 30-2, ¶¶ 4–5. The only other items of evidence he submits in support of his claim to be similarly situated with all Production Supervisors employed by Tyson nationwide are a collection of job reviews obtained from indeed.com and glassdoor.com, *see* Doc. 30-8, and two sworn declarations by non-party individuals that were filed in a different federal lawsuit in October 2020, *see* Docs. 30-6, 30-7. The Court will disregard the online reviews because they lack even the most basic indicia of reliability, having been selectively culled from anonymous postings on internet websites. As for the non-party declarations, they display no more familiarity with Tyson's nationwide practices

than Mr. Freeman's declaration does. Therefore the Court will conditionally certify a collective action, but only with respect to the Pine Bluff facility where Mr. Freeman worked as a Production Supervisor.

One further issue remains regarding the class definition, which is its temporal scope. Mr. Freeman has requested conditional certification of a class of Production Supervisors employed "from October 8, 2018 to the present." *See* Doc. 31, p. 1. That is a cutoff date three years before the complaint was filed in this case. Tyson objects that this is inconsistent with the statute of limitations for FLSA claims, which runs from when a collective action member files his or her notice of consent to join the lawsuit rather than from the date when the original complaint is filed. Tyson is correct about this. *See* 29 U.S.C. § 256(b). Therefore the Court will conditionally certify the following collective definition:

> All current and former Production Supervisors employed by Tyson at the Pine Bluff, Arkansas Processing Plant from August 18, 2019 to the present who were paid with a salary and did not receive overtime pay.

The Court recognizes that this definition may still be somewhat overinclusive, but the matter of whether a particular opt-in plaintiff's claim is time-barred can be addressed at the time he or she joins this case.

### 3. Form of Notice

A collective action depends "on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-La Roche*, 493 U.S. at 170. The Court must manage the preparation and distribution of notice so that it is "timely, accurate, and informative." *Id.* at 172. A district court "has broad discretion regarding the 'details' of the notice sent to potential opt-in plaintiffs." *Butler v. DirectSat USA, LLC*, 876 F. Supp. 2d 560, 574 (D. Md. 2012). When

determining the details, the Court is "guided by the goals of the notice: to make as many potential plaintiffs as possible aware of this action and their right to opt in without devolving into a fishing expedition or imposing undue burdens on the defendants." *Diaz v. N.Y. Paving Inc.*, 340 F. Supp. 3d 372, 386 (S.D.N.Y. 2018) (internal alterations and citation omitted). Just as it is not the purpose of notice to solicit participation in litigation, it is not the purpose of notice to discourage participation.

Mr. Freeman has submitted a proposed notice, a proposed consent to join, a proposed reminder post card, a proposed e-mail notice, and a proposed text message notice. *See* Doc. 30-11. Tyson objects to certain aspects of these documents and proposes certain changes. The Court will address each objection and proposal in turn.

First, Tyson asks that the proposed notice as well as any reminder notice be amended to include the following disclaimer: "The Court neither encourages nor discourages participation in this lawsuit." This Court's consistent practice in other FLSA collective actions has been to include such disclaimers in reminder postcards, but not to include them in original notices. *See, e.g.*, *Tremols v. Juan Barcenas Ins. and Fin. Servs., LLC*, 2021 WL 4896173, at *4 (W.D. Ark. Oct. 20, 2021); *Lews v. Shine Solar, LLC*, 2020 WL 4784612, at *6 (W.D. Ark. Aug. 18, 2020); *Murray v. Silver Dollar Cabaret, Inc.*, 2017 WL 514323, at *5 (W.D. Ark. Feb. 8, 2017). The Court will adhere to that practice in the instant case, and will order that the reminder post card include the requested disclaimer.

Next, Tyson objects to the final sentence from section 6 of the proposed notice, which section reads as follows:

> **6. Tyson Cannot and Will Not Fire You for Joining This Lawsuit.**
> Many employees fear being terminated for making a wage claim. However, federal law prohibits Tyson from firing or in any other manner discriminating against you because you join this case. No person who joins this case will be terminated or

11

> otherwise retaliated against for joining this lawsuit.  *If you suspect any retaliation, call the attorneys below at (713) 621-2277 to speak with Ricardo Prieto or (212) 300-0375 to speak with Joseph Fitapelli.*

(Doc. 30-11, p. 4) (italicization added).  Tyson argues that it is improper for individuals who believe they might have been retaliated against to be directed to contact Mr. Freeman's counsel, because no claims for retaliation have been made in this case and putative collective members are free to choose their own legal counsel.  The Court agrees with Tyson on this.  Tyson has asked that this sentence either be removed entirely, or alternatively that it be replaced with the following language: "If you suspect any retaliation, contact your attorney immediately."  The Court will order that the final sentence of section 6 be replaced with the latter language, which is consistent with this Court's practice in previous FLSA collective actions.  *See, e.g.*, *McCoy v. Elkhart Prods. Corp.*, 2021 WL 510626, at *4 (W.D. Ark. Feb. 11, 2021).

Finally, the Court will address *sua sponte* a related concern which was not raised in the parties' briefs.  Paragraph 4 of Mr. Freeman's proposed consent-to-join states:

> I consent to having the Representative Plaintiff in the complaint against Tyson make all decisions regarding the litigation, the method and manner of conducting this litigation, the terms of any potential settlement of this litigation, releasing of claims, entering into an agreement with Plaintiff's Counsel regarding attorneys' fees and costs, and all other matters pertaining to this lawsuit.

*See* Doc. 30-11, p. 6.  This Court has previously expressed the opinion that although in Rule 23 class actions a class representative may be empowered to settle claims on behalf of all class members, "[i]n a collective action, each individual opt-in plaintiff is a separate client . . . and the Rules of Professional Conduct applicable in this Court are clear that '[a] lawyer shall abide by a client's decision whether to settle a matter.'"  *Tremols*, 2021 WL 4896173, at *4 (quoting Ark. R. Prof'l Cond. 1.2(a)).  Therefore, consistently with this Court's previous practice, the Court will order that paragraph 4 of the proposed consent-to-join be removed.  *See id.*

12

#### 4. Dissemination of Notice and Requests for Information

Tyson also makes several procedural objections to Mr. Freeman's proposed methods of notice, each of which will be addressed below. First, Tyson objects to Mr. Freeman's request for a 90-day notice period, and asks for a 60-day notice period instead. This Court ordinarily finds that 60-day notice periods are sufficient for efficiently facilitating notice without delaying litigation, especially when most potential opt-in plaintiffs are likely to be located in Arkansas. *See, e.g.*, *Ferguson v. Ark. Support Network, Inc.*, 2018 WL 2136359, at *4 (W.D. Ark. May 9, 2018). As Mr. Freeman has not provided this Court with any reason to believe it will be unusually difficult to identify or contact potential opt-in plaintiffs in this case, *cf. Murray*, 2017 WL 514323, at *6 (approving 90-day notice period "because of the transient nature of exotic dancers and the lack of available contact information), the Court will adhere to its usual practice of permitting a 60-day notice period.

Tyson also asks that Mr. Freeman be limited to disseminating notice through the U.S. Mail only, instead of also being permitted to disseminate notice via email and text message. Alternatively, Tyson asks that the Court limit the only form of electronic notice to email. As with all of Tyson's other objections, the Court will follow its usual practice. Here, that entails permitting email notice (to both work and personal email addresses), but disallowing text message notice as needlessly repetitive, and not requiring Tyson to take affirmative steps to obtain email addresses from those employees for whom Tyson does not already have that information. *See, e.g.*, *McCoy*, 2021 WL 510626, at *5.

Next, Tyson objects to Mr. Freeman's request to send a reminder postcard as redundant and potentially being misinterpreted as providing judicial endorsement for joining the litigation. This Court routinely allows reminder postcards to be sent so long as they contain the

aforementioned disclaimer that the Court neither encourages nor discourages participation in this lawsuit, *see, e.g.*, *Tremols*, 2021 WL 4896173, at *4; *Lews*, 2020 WL 4784612, at *6; *Murray*, 2017 WL 514323, at *5, and that is what the Court will allow here as well.

Tyson also objects to Mr. Freeman's request that Tyson post the notice in common areas or on employee bulletin boards at its production facility. This Court routinely orders posting of such notices in FLSA collective actions, and will do so here. *See, e.g.*, *King v. Rockline Indus., Inc.*, 2021 WL 5991895, at *5 (W.D. Ark. Apr. 7, 2021). But since the collective is limited to Production Supervisors at the Pine Bluff facility, that is the only facility where Tyson will be required to post the notice.

Finally, Tyson asks that the Court appoint a third-party administrator to receive the contact information and disseminate the notice rather than sending the information directly to Mr. Freeman's counsel, in order to protect the private and confidential information of potential opt-in plaintiffs. The Court sees no reason why Mr. Freeman's counsel cannot be trusted to adequately safeguard this information. Litigators routinely handle sensitive and confidential information in the course of their work, and Tyson has not shown any cause why this Court should be concerned about the ability of Mr. Freeman's counsel to do so responsibly. Indeed, in this very case the parties previously moved for (and were granted) a protective order (Doc. 24) that explicitly contemplates these attorneys' handling of other types of confidential business information. *See* Doc. 24, ¶ 2.

### B. Rule 23 Certification

Mr. Freeman has also filed a motion for certification of a class action under Rule 23 for his state-law ASWL claim. For a class to be certified under Rule 23, the movant has the burden of affirmatively showing that the requirements of Rule 23 are met. *See Wal-Mart Stores, Inc. v.*

*Dukes*, 564 U.S. 338, 350 (2011).  The Court is required to conduct "a rigorous analysis" to determine whether the movant has satisfied this burden.  *Comcast Corp v. Behrend*, 569 U.S. 27, 33 (2013).  In performing this analysis—and unlike with conditional certification of an FLSA collective action—the Court may "probe behind the pleadings" in an inquiry that "entail[s] some overlap with the merits of the plaintiff's underlying claim."  *See Dukes*, 564 U.S. at 350–51.

### 1. Legal Standard

Before a class can be certified under Rule 23, the movant must demonstrate that the class representative is a member of the class and that:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative part[y] are typical of the claims or defenses of the class; and
> (4) the representative part[y] will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  These four prerequisites are commonly referred to as the requirements of "numerosity, commonality, typicality, and adequate representation."  *Dukes*, 564 U.S. at 349.  A class that meets these four requirements may proceed with its action if it also qualifies as one of the types of actions that may be maintained under Rule 23(b).  The burden is on the party seeking certification to demonstrate with evidentiary proof that Rule 23(b) is satisfied.  *Comcast Corp.*, 569 U.S. at 33.

Mr. Freeman seeks certification under Rule 23(b)(3).  An action may be maintained under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The Rule provides a nonexclusive list of matters pertinent to these findings:

> (A) the class members' interest in individually controlling the prosecution or defense of separate actions;

  (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
  (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
  (D) the likely difficulties in managing a class action.

*Id.*

### 2. Analysis

This Court has repeatedly expressed disinclination to certify Rule 23 classes for state-law ASWL claims in cases where such claims overlap with FLSA claims that have been conditionally certified as collective actions. *See, e.g.*, *Warner v. Little John Transp. Servs., Inc.*, 2019 WL 3331797, at *1 (W.D. Ark. July 24, 2019); *Murray*, 2017 WL 514323, at *7. The reason for this reluctance concerns the nature of such lawsuits. Both FLSA collective actions and Rule 23 class actions provide for notice to be given to members of the respective classes. But while the FLSA provides for participation on an opt-in basis, *see* U.S.C. § 216(b), Rule 23 requires that nonparticipating class members affirmatively opt *out* of the suit. *See* Fed. R. Civ. P. 23(c)(1)(B). Although this Court has never held, and does not hold today, that FLSA collective actions and state-law minimum wage class actions are "inherently incompatible," *see Warner*, 2019 WL 3331797, at *1; *Murray*, 2017 WL 514323, at *8, it has yet to preside over a case where it was satisfied that a state-law minimum wage class action was "superior to other available methods for fairly and efficiently adjudicating the controversy," Fed. R. Civ. P. 23(b)(3), when an FLSA collective action was already conditionally certified. That remains so today.

Receiving multiple notices with differing opt-in-versus-opt-out instructions "would likely be confusing for recipients." *Murray*, 2017 WL 514323, at *8. "The potential for confusion is increased by the partial overlap between the rights of a member of an FLSA collective action and a state-law minimum wage class. Differences in rights and relief run the risk of creating

inconsistent relief for Plaintiffs." *See Miller v. Centerfold Entm't Club, Inc.*, 2017 WL 10185485, at *3 (W.D. Ark. Mar. 10, 2017); *see also Johnson v. Ark. Convalescent Ctrs., Inc.*, 2013 WL 3874774, at *2 (E.D. Ark. July 25, 2013) (stating that certification of both a collective and class action "seems to promise both needless effort and confusion").  Here, Mr. Freeman attempts to mitigate this concern by proposing a single hybrid notice for both the collective and class actions. *See* Doc. 30-16.  But while that approach may consolidate and simplify the paperwork potential collective/class members receive, it does not simplify the actions that such individuals must take in order to exercise or waive their rights, which requirements are of course imposed by the laws themselves that govern these respective forms of action.  The fact remains that the already-certified collective action will allow the parties in this action to fairly and effectively litigate their claims, which leaves this Court skeptical that a Rule 23 class action provides a superior method for adjudicating these claims.

There is an important caveat to the foregoing analysis, however, which is that the collective action which this Court is conditionally certifying is narrower in geographic scope than the class for which Mr. Freeman is seeking Rule 23 certification: the former is restricted to Tyson's Pine Bluff facility, while the latter seeks statewide certification throughout all Tyson facilities in Arkansas.  So, at first blush, it would appear that class members outside the Pine Bluff facility in fact will *not* have an opportunity to litigate their claims through the FLSA collective action.  However, Rule 23(b)'s requirement that questions of law or fact common to class members predominate over any questions affecting only individual members would inevitably prevent certifying a class broader in geographic scope than that for the collective action—and indeed, ultimately preclude the certification of any Rule 23 class at all.

17

The Court has already discussed, in its consideration of FLSA conditional certification, the fact that Mr. Freeman has not demonstrated any knowledge of whether Production Supervisors outside Tyson's Pine Bluff facility experienced the same working conditions he did during the relevant time period. Importantly, Mr. Freeman does not appear to be claiming that his formal job description included non-exempt duties that come within the scope of the federal- and state-law minimum wage and overtime requirements. Rather, he claims that he was routinely required to *deviate* from the formal requirements of his position by performing the same duties as hourly lineworkers. *Compare* Doc. 34-3, pp. 7–8, *with* Doc. 30-2, ¶ 14. He has not put forward any evidence that the Pine Bluff facility had a formal policy in place requiring all Production Supervisors to deviate from their formal job duties in this manner; instead, he has simply testified that he is personally aware of some other Production Supervisors at the Pine Bluff facility who did in fact so deviate from the formal requirements of their job description. *See* Doc. 30-2, ¶¶ 18–22. The upshot of this is that individualized factual questions would predominate concerning whether and to what extent any particular member of the class was required to perform lineworker duties.

In other words, Mr. Freeman has failed to demonstrate that questions of law or fact common to class members predominate over any questions affecting only individual members, and he has failed to demonstrate how a class action is a superior method of adjudication here. Therefore his request for Rule 23 class certification will be denied.

### III. Conclusion

IT IS THEREFORE ORDERED that Plaintiff Anthony Freeman's motion for conditional certification of an FLSA collective action, for approval and distribution of notice, for disclosure of contact information, and for Rule 23 class certification (Doc. 30) is GRANTED IN PART AND DENIED IN PART as follows:

- The Court conditionally certifies the case as a collective action pursuant to 29 U.S.C. § 216(b) and authorizes notice to be sent to potential opt-in plaintiffs. The opt-in class will consist of all current and former Production Supervisors employed by Tyson at the Pine Bluff, Arkansas Processing Plant from August 18, 2019 to the present who were paid with a salary and did not receive overtime pay. Within 20 days after receiving contact information for potential opt-in plaintiffs, Mr. Freeman must prepare and distribute notice to all putative plaintiffs as allowed by this order. Mr. Freeman may send by mail and email a reminder postcard to putative plaintiffs who have not returned opt-in forms 30 days after notice is mailed to them. Mr. Freeman must file any opt-in plaintiffs' signed consent-to-join forms with the Court within 60 days after mailing the first notice to that opt-in plaintiff.

- Tyson must provide to Mr. Freeman in a usable electronic format the names, last known mailing addresses, email addresses, telephone numbers, and dates of employment of all putative members of the collective action. **Tyson has until September 1, 2022 to deliver the contact information to Mr. Freeman.**

- Mr. Freeman's proposed notice, consent-to-join form, reminder post card, and e-mail notice are approved in accordance with and subject to the requirements and changes discussed in this Opinion and Order.

- Beginning 10 days after sending the prospective collective members' contact information to Mr. Freeman, and continuing for 60 days thereafter, Tyson is directed to post a copy of the notice in a conspicuous location at its Pine Bluff facility in an employee common area or where other notices of employee rights are posted.

- The Court declines to certify a Rule 23 class action.

IT IS SO ORDERED this 18th day of August, 2022.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE